### C. S. KNOTT v. W. H. GODAIR ET AL.

Decided December 4, 1909.

**Broker—Sale of Land—Right to Commissions—Evidence.**

In an action by a land agent against other agents and the owner of the land for commissions for alleged services rendered in assisting to procure a purchaser for the land, evidence considered and held insufficient to authorize a recovery by plaintiff either by reason of contract or upon quantum meruit.

Appeal from the District Court of Tarrant County. Tried below before Hon. W. T. Simmons.

*Templeton & Agerton* and *J. Y. Cummings*, for appellant.—The plaintiff was entitled to recover of said defendants the value of the services which he had rendered at their request, and it was error for the court to withdraw such issue from the jury. McDonald v. Cabiness, 98 S. W., 943; McDonald v. Cabiness, 100 Texas, 615; Hurt v. Jones, 79 S. W., 486; Schultz v. Zelman, 111 S. W., 776.

The fact that the owner of the property in fact sold same to the purchasers thereof, on terms materially different from those on which his agents had been authorized to offer such property to such purchasers on September 1, 1906, will not defeat the agent's right to recover his commissions on such sale, or in lieu thereof compensation for his services, when their efforts resulted in bringing the seller and purchaser together. Pierce v. Nichols, 50 Texas Civ. App., 443; Graves v. Bains, 78 Texas, 94; Byrd v. Frost, 29 S. W., 46; McDonald v. Cabiness, 98 S. W., 945 and 946; Glade v. Eastern Ill. M. Co., 107 S. W., 1005; Holland v. Vinson, 101 S. W., 1131; 19 Cyc., 249, 262, 263; Hovey v. Aaron, 113 S. W., 718.

If the plaintiff, at the request of Bob Pyron and the Bob Pyron Land Company, in good faith rendered services to said defendants in endeavoring to find and secure a purchaser of the Godair lands, and if the action of said defendants in themselves selling said lands rendered plaintiff's efforts to secure a purchaser for same ineffective, then plaintiff was entitled to recover of said defendants the reasonable value of the services so rendered, and the court should have so instructed the jury. McDonald v. Cabiness, 98 S. W., 945, 946; McDonald v. Cabiness, 100 Texas, 615; Hurt v. Jones, 79 S. W., 486; Schultz v. Zelman, 111 S. W., 776.

*A. L. Matlock, Wm. D. Williams, R. M. Rowland* and *Capps, Cantey, Hanger & Short*, for appellees.—Appellant's own testimony showed that he was playing the dual rule of agent for the seller and

joint purchaser, and doing so without the knowledge of either Godair or Pyron. Hence he was barred from any recovery either against Godair or Pyron; and the court would have been justified in giving a peremptory instruction against him; and he has suffered no harm by the giving of the instructions contained in paragraph one of the court's charge. Shannon v. Marmaduke, 14 Texas, 217; Armstrong v. O'Brien, 83 Texas, 635; Smith v. Tripis, 2 Texas Civ. App., 267; Tinsley v. Penniman, 12 Texas Civ. App., 591; Ryan v. Kahler, 46 S. W., 71; Leathers v. Canfield, 45 L. R. A., 33, and note, especially subdivision X of note; Kimball v. Ranney, 46 L. R. A., 403; Casady v. Carraher, 119 Iowa, 502, 93 N. W., 386; Yellow Pine Lbr. Co. v. Carroll, 76 Texas, 135; Porter v. Woodruff, 36 N. J. Eq., 174; Finch v. Conrade, 154 Pac., 326; Michoud v. Girod, 4 How., 503, 11 Law ed., 1076; Walker v. Osgood, 98 Mass., 348, 93 Am. Dec., 168; Moore v. Moore, 5 N. Y., 256; Taussig v. Hart, 58 N. Y., 425; Gann v. Zettler, 60 S. E., 283; Mechem on Agency, secs. 454-6, 461, 463, 952, 953; Foss Inv. Co. v. Ater, 95 Pac., 1017; Cotton v. Rand, 93 Texas, 7.

The relation between Pyron and Knott contemplated that Knott would work up other deals if he could, but would not interfere with one that Pyron was already negotiating; and the undisputed facts in the case show that Knott knowingly interfered in Pyron's deal with the Higginbothams and Harrises. Hence the court would have been justified in giving a peremptory instruction against him, even as to his claim against Pyron, and he is not in a position to complain of any instruction given. Spotwood v. Morris, 6 L. R. A. (N. S.), 665; Burns v. Hill, 2 App. Civ. Cases, 523; Evans v. Gay, 74 S. W., 575.

CONNER, CHIEF JUSTICE.—This action was brought in the District Court of Tarrant County by C. S. Knott against W. H. Godair, the Bob Pyron Land Company, Bob Pyron, Sam Bucklew and E. H. Holcomb, to recover the sum of seven thousand three hundred and six dollars and twenty cents which was claimed by plaintiff to be due him as commissions for services rendered in assisting defendants to procure a purchaser for twelve leagues of land owned by the defendant Godair, and which had been sold on terms satisfactory to the owner. The petition charged that said lands had been sold through the joint efforts of plaintiff and the Bob Pyron Land Company, and that by agreement the commissions on such sale were to be divided between them. The plaintiff also sued in the alternative on a *quantum meruit* for the value of his services rendered at the request of said Bob Pyron and the Bob Pyron Land Company in assisting them to find a purchaser for said lands.

The defendants denied that plaintiff had rendered any assistance in procuring a purchaser for said lands, and denied his right to recover anything for such alleged services. G. H. Colvin intervened and claimed an interest in said commission of four thousand dollars, which interest he claimed had been assigned to him by the Bob Pyron Land Company. A trial before a jury resulted in a verdict and judgment for the defendants and intervener.

On this appeal from the verdict and judgment mentioned numerous errors are assigned, but they are all sufficiently disposed of by the

conclusion reached by us, that under the undisputed evidence no recovery in appellant's behalf would have been authorized. As briefly as we can state them, the undisputed facts are, substantially, that appellee Godair was the owner of twelve leagues of land situated in Glasscock, Hutchinson, Moore and Loving Counties, Texas, for the sale of which at five dollars and fifty cents per acre he, on June 30, 1906, appointed the Oliver Land & Immigration Company, to all the rights of which the Bob Pyron Land Company afterwards succeeded, exclusive agent. The commission agreed upon was five percent. As early at least as July 27, 1906, Bob Pyron, as manager of the Oliver Land & Immigration Company, began communication with R. W. Higginbotham, of the firm of Higginbotham Bros., in the effort to make a sale of the Godair lands. The negotiations with the Higginbothams continued under the terms of the original contract of exclusive agency until September 3, 1906, when Bob Pyron, as manager of the Bob Pyron Land Company, consummated the sale of the said lands with R. W. Higginbotham and John G. Harris, who were acting for themselves and for J. M. Higginbotham and H. L. Harris. The sale was made at the price per acre originally authorized, but Bob Pyron reduced his commission from five percent to two and one-half percent in order to obtain the consent of Godair, who was present and participating in the final negotiations, to an alteration in the terms of payment.

Appellant's claim for commissions must rest upon the following facts, viz., that on May 7, 1906, appellant, who was a real estate broker at Colorado, Texas, wrote to Mr. Godair for price and terms at which the lands in question could be bought, in response to which Godair wrote the following letter:

"Chicago, Ill., June 1, 1906.

"C. S. Knott & Son, Colorado, Texas.

"Your letter of May 7th sent to me here from Roswell, in regard to my land in Dawson County. I have twelve leagues of land in a body, besides some scattering sections outside of the solid land. I am now pressing [pricing] the twelve leagues in a body at $5.50 per acre, but should my man sell a part of it off in small tracts, I would then take it off and sell it all in small pieces at a higher price. I get one-third cash and the balance on time at eight percent. I would not give any option on it. Yours truly,     W. H. Godair."

Thereafter appellant, some time in June, 1906, as he thinks, met Mr. John G. Harris, one of the final purchasers, and informed him of the Godair lands, with which he was familiar, in answer to a statement of Mr. Harris that he was "looking for a piece of land." He also later met and talked with the Higginbothams about the land, from one of whom on August 29, 1906, he received the following letter:

"Dublin, Texas, Aug. 28, '06.

"Messrs. C. S. Knott & Son, Colorado, Texas.

"Gentlemen: We had a letter from our Mr. H. L. Harris in regard

to 50 sections of the Godair land at 5½. He indicated that you would probably take one-fourth of this and if we like it we will take the other ¾. Please wire me upon receipt of this, if I am correctly informed, and at what time and place I can meet you to see the land.

"Yours truly,<br>"J. M. Higginbotham."

To this letter the plaintiff replied by wire, as follows:

"August 29, 1906.

"J. M. Higginbotham, Dublin, Texas.
"Will take an interest with you if I am interested in the sale."

On receipt of this message J. M. Higginbotham replied by letter as follows:

"Dublin, Texas, August 29, 1906.

"Mr. C. S. Knott, Colorado, Texas.
"Dear Sir: Your message received. We do not care to come out and look at the land unless we are quite sure of making a deal. Can we get option until we had [have] time to look at the land? If so, and you could go with us to look at same, we could meet you at Big Springs, Monday. How far is this land from Sparinburg? What percent do you think is first-class land; what terms can we get; how many sec. will we have to buy? Please let us know all you can tell us about the land and where it is. If you can send us plat of same would like to have it.     Yours truly,

"J. M. Higginbotham."

This letter of August 29th was received by appellant on August 30th and, having before this been informed that appellee Pyron claimed to have the exclusive agency to sell the lands, he sent the following telegram:

"Colorado, Texas, Sept. 1, 1906.

"Bob Pyron Land Co., Fort Worth, Texas.
"If you control Godair ranch, wire price; party would inspect it Monday.     C. S. Knott."

To this message Pyron replied by wire as follows:

"Fort Worth, Texas, Sept. 1, 1906.

"C. S. Knott, Colorado, Texas.
"Price five-fifty per acre; one-third cash, or twenty-four thousand cash. Seventy-five thousand January first; balance three years, at six percent; must have answer Monday. Your commission two and one-half percent; act quick.     Bob Pyron."

Pyron also wrote the following letter:

"Fort Worth, Texas, Sept. 1, 1906.

"Mr. C. S. Knott,

"Colorado City, Texas.

"Dear Sir: Your telegram just received. It read as follows: "If you control Godair ranch, wire price; party would inspect Monday.' I wired you as follows: 'Price $5.50 per acre; one-third cash, or $25,000 cash, $75,000 Jan. the 1st, balance three years at 6 percent. Must have answer Monday. Your commission 2½ percent. Act quick. Answer.' Now, Mr. Knott, Godair is here. Judge Lindsey and others have been getting him a little excited, telling him that they could sell this land at from $10 to $12 per acre, which I expect they could do without any trouble. He has, after a week's wrangling, decided to give me until Monday night to sell it as a whole at $5.50 per acre; 1/3 cash, payments as follows: $25,000 now; $75,000 Jan. the 1st, balance 1, 2 and 3 years, payable annually at 6 percent interest. Now he will give longer time than this if the party so desires, the party to assume the amounts due the different counties. I enclose you herein a statement showing the amounts. Now, if you ever did get busy, let it be now. Rush your man over the land, and wire me, so I can get as early Monday evening as possible, for if the trade is closed as above stated, it will make us a nice piece of money and can be carried out without any trouble. However, if you start into it, and can not possibly wire me Monday, wire me as early Tuesday as you can, or close it just as early as you can, and let me know, and we will make him come through some way anyway, but for goodness sake try to get your party to accept the proposition Monday. This is certainly a cheap piece of land and whoever gets it will make a barrel of money. I am sending this by the conductor so you will be sure to get it at the train. Hoping that you will make the deal and let me know as early as possible Monday evening, I am,    Yours very truly,

"Bob Pyron Land Company,

"By Bob Pyron."

After the receipt of the above telegram of September 1st, in answer thereto, before the receipt of the letter last quoted, appellant sent the following telegram:

"Colorado, Texas, Sept. 1, 1906.

"Bob Pyron,

"Fort Worth, Texas.

"Telephone Higginbotham, Dublin; tell them I say buy.

"C. S. Knott."

He at the same time wired J. M. Higginbotham, at Dublin, as follows:

"Telegraphed Pyron to telephone you; land all very fine; bargain; buy; I am ready. Twenty-five thousand cash."

He also went to work in Colorado City to find other parties who would take the lands in the event the Higginbothams and Harrises

could not be induced to purchase them. On the following Monday morning, September 3d, this arrangement with the Colorado parties was made, whereby it was agreed that they would take the land at the price and on the terms stated, provided the deal with the Higginbothams and Harrises did not go through, these negotiations being expressly made subject to the negotiations then pending with the Higginbothams and Harrises. Pending the negotiations with the Colorado parties, however, and in answer to appellant's telegram to Bob Pyron of September 1st, above quoted, Pyron wired appellant as follows:

"Fort Worth, Texas, Sept. 2, 1906.

"I have had the sale of the Godair land up with Higginbothams for a month. Bob Pyron."

Early the next morning, September 3, 1906, the plaintiff wired Pyron as follows:

"Sept. 3, 1906.

"Bob Pyron: I think can make sale if you will divide commissions again and Godair will make several deeds. C. S. Knott."

Later in the day, and after arrangements with the Colorado parties had been made, as above stated, the plaintiff further wired Pyron as follows, to wit:

"September 3, 1906.

"Bob Pyron, Fort Worth.

"If Higginbothams have not bought land, I have made sale here. "C. S. Knott."

This message was sent in the forenoon. About sundown that evening appellant received from Pyron the following answer:

"Sept. 3d.

"C. S. Knott, Colorado, Texas.

"Godair lands sold. Bob Pyron."

Thereafter, on September 4th, appellant came to Fort Worth, inquired of Pyron if he, appellant, was "interested" in the deal, and when informed that his name was not mentioned in the transaction, informed Pyron of the arrangement he had made with the Colorado parties to take the land, and told Pyron that he was authorized to put up a forfeit to secure the deal with the Colorado people. Pyron again told appellant that the land had been sold to the Higginbothams, and appellant thereupon demanded of Pyron one-half of the commissions on that deal. Pyron denied appellant's right to any part of such commissions, and hence the suit.

It should perhaps be further stated that after appellant's visit to Pyron on September 4th, as above stated, he further got into communication with J. M. Higginbotham, of Dublin, and inquired whether he had been admitted as one of the purchasers. Higgin-

botham in reply informed him to the effect that the trade had really been closed through R. W. Higginbotham, without consultation with him. R. W. Higginbotham testified to the effect that he and John G. Harris came to Fort Worth and closed the sale with Mr. Godair, and that they did not know appellant in the transaction; that they acted for J. M. Higginbotham and H. L. Harris without final consultation with them; that they did not desire appellant as one of the co-purchasers, and that they did not pay any attention to Knott. J. M. Higginbotham testified that Knott's telegram of September 1st had no influence with him in inducing the purchase, and Pyron testified that about August 1, 1906, he had informed Knott in a conversation that he, Pyron, had the Godair ranch for sale, and was negotiating with the Higginbothams to sell to them. Appellant remembered the conversation, but did not remember that Pyron told him he was trying to sell to the Higginbothams. It should also be further stated that prior to appellant's telegram to Pyron on September 1st, to "telephone Higginbotham, Dublin; tell them I say buy;" Pyron had no knowledge that appellant was or had been negotiating with either the Higginbothams or the Harrises.

It seems clear to us that this evidence affords no reasonable basis for a recovery by appellant. Regardless of the inference arising from the evidence that appellant's efforts to interest the Higginbothams and Harrises was with a view of himself becoming a part purchaser, and not merely to procure purchasers for Godair, there is nothing to sufficiently support a conclusion that there was a contract, express or implied, to pay appellant commissions for what he did. Godair's letter to him of June 1, 1906, was a mere answer to an inquiry for prices, etc., and cannot reasonably be construed as an appointment of agency, authorizing appellant as such to procure purchasers. His acts in the premises, as to Godair, were mere gratuities, particularly in view of the fact that Godair had not requested said services nor had knowledge thereof. What appellant did between the date of Godair's letter and the date of his first communication with Pyron seems altogether too inconclusive to form a foundation for a claim against Godair for reasonable compensation therefor.

As to Bob Pyron, and we here use the name as representing the Oliver Land & Immigration and the Bob Pyron Land Companies as well as himself, it can not reasonably be pretended that appellant performed any service for which Pyron was bound to compensate, prior to Pyron's answer of September 1st offering to divide commissions. Prior to this date, as to Pyron appellant was evidently a mere volunteer. What did he do after that? Nothing that we can find, save to wire Pyron to telephone Higginbotham and tell them to buy, and to also wire J. M. Higginbotham to buy, accompanied with the assurance that he, appellant, was ready. Can it be said that this, under the circumstances, renders Pyron or Godair liable for commissions? Neither, prior to this, had any knowledge that appellant was or had been dealing with the Higginbothams, and Pyron promptly repudiated appellant's interference with the Higginbothams with whom he had been negotiating more than a month and with whom he had a sale almost concluded. We do not think that appellant could thus intrude, or

that in view of the Higginbothams' testimony that the telegram to Higginbothams did not influence the final purchase on their part in any degree. Nor do we think appellant's efforts with the Colorado parties can be a basis for commissions. He knew at the time that a sale to the Higginbothams was imminent, and expressly acted subject thereto.

We conclude that all assignments of error should be overruled and the judgment affirmed. It is ordered accordingly.

*Affirmed.*

Writ of error refused.