## O. K. BAKERY v. MORTEN MILLING CO.
### No. 12888.

Court of Civil Appeals of Texas. Dallas.
May 18, 1940.

Alpha & Brunson, of Houston, for appellant.

Bromberg, Leftwich, Carrington & Gowan, of Dallas, for appellee.

YOUNG, Justice.

Morten Milling Company has sued appellant for an alleged breach of a written agreement to buy flour, and recovered judgment of $2,743.04, which has been duly appealed. Under such contract, dated June 18, 1937, O. K. Bakery, defendant below, agreed to purchase 2,000 barrels of "Drinkwater" flour, of the Milling Company, @ $4.95 per barrel, terms of payment to be "usual", which was understood to mean thirty days after each delivery. Defendant alleged in defense that, after it had accepted and paid for more than one-half of the flour, the Milling Company, through its agents, South Texas Grain Company and W. R. Archer, refused to deliver any further flour, except for cash; and that such refusal constituted a breach of the contract by plaintiff, whereby defendant was justified in refusing to accept any further tenders of flour, so notifying plaintiff, etc. To such defense, by supplemental petition, plaintiff alleged that in consideration of its forbearance to sue defendant on certain other items of indebtedness, the contract of June 18, 1937, was changed to provide that defendant would pay cash for all flour subsequently shipped.

In a jury trial, defendant admitted liability of $950.37 on a prior debt, but strenuously resisted plaintiff's claim that it was due any amount in liquidated damages for breach of contract, under the June, '37, writing, wherein provision is made for such damages in case of default by the buyer. The seller's remedy (and on which plaintiff bases its further recovery herein) is here quoted: To "Terminate the contract as to any unshipped balance, and, for each barrel of flour unshipped, recover from Buyer as liquidated damages a sum to be computed by the following formula: (a) One-sixth (1/6c) cent per barrel per day for each day from date of contract to date of termination; plus (b) twenty (20c) cents per barrel, as to the cost of selling; plus (c) amount of decline, if any, per bushel in the average market price of cash wheat in carload lots at the mill, or basing point (at Seller's option), between date of contract and date of termination, multiplied by four and six-tenths (4.6) times the number of barrels of flour remaining unshipped."

The liquidated damages were thus computed to be $1,434.88, and, on close of testimony, the jury was instructed to return a verdict for plaintiff in said amount, plus the $950.37 admittedly due, together with 15 per cent. attorney's fees, a total recovery of $2,743.03.

In several propositions, appellant makes the contention, (1) that jury questions were raised as to whether the written contract was ever modified or breached by it; and (2), of insufficient evidence on which to compute any amount of contract or liquidated damages, if recoverable.

▌ The original terms of payment of the contract in suit were thirty days after each delivery. The testimony of N. H. Nicholson, president of appellant concern, discloses that later, these terms were changed to C.O.D. payments for the balance of the flour, as and when delivered. This arrangement followed Mr. Nicholson's inability to pay for shipments in 100-barrel lots, as well as to take care of the $950 prior debt; he stating, "Ship me 50 barrels and I am willing to pay C.O.D." It appears that flour was delivered to appellant thereafter, which was paid for by check, but around April 1, 1938, the Bakery requested delivery of 35 barrels, tendering check in payment, which was refused by the Milling Company's warehouse agent, South Texas Grain Company, cash being demanded for the purchase price of the particular flour. Thus arose the contention by each party to the written contract, modified as just mentioned, that the terms of same had been breached by the other—appellant claiming release from liability because of appellee's refusal to accept payment by check, and the latter

asserting a breach because of its failure to receive money under the C.O.D. agreement. Mr. Nicholson, of the Bakery, endeavored to testify that his tender of check was in compliance with his understanding of the C.O.D. payments, but the testimony was properly excluded by the court. The initials "C.O.D." have a well-established commercial and legal significance, and indicate "Collect on Delivery", or, more fully stated, a delivery of the particular commodity upon payment of the price due the seller. Craddock & Co. v. Wells-Fargo Company Express, 58 Tex.Civ.App., 125 S.W. 59; Acts 30th Leg., Ch. 4, H.B. 53; Hutchinson on "Carriers", 3rd Ed., sec. 726. A purchaser does not meet the requirement of the term, "Collect on Delivery" by giving his check, as, thereunder, the seller has the right to insist upon a payment of the debt in legal tender, which is cash. State v. Tyler County State Bank, Tex.Com.App., 277 S.W. 625, 42 A.L.R. 1347; El Paso v. Two Republics Life Ins. Co., Tex.Civ.App., 278 S.W. 231, writ refused. A repudiation of the instant contract was, therefore, not justifiable, and appellee's instructed verdict was proper, provided there be in the record, sufficient data on which to calculate the seller's recoverable damages. In the June, '37, agreement was the clause above quoted, stipulating for a computable sum as liquidated damages in case of the purchaser's non-compliance; and it will be noted that appellant did not allege that such was not a just measure of damages; neither does the evidence, in any respect, show that the seller's damages, as contracted for, were unreasonable. Collier v. Betterton, 87 Tex. 440, 29 S.W. 467, 468; American Nat. Bank v. Haggerton, Tex.Civ.App., 250 S.W. 279. Were they susceptible of definite ascertainment? We think so. It was testified by Mr. Meek, of appellee company, that on June 18, 1937, sufficient wheat had been purchased to fulfill all its contracts for flour. Appellant's contract was terminated by the Morten Milling Company by letter of May 19, 1938. The average price of wheat was shown on said date to be 96½ cents per bushel, whereas, on date of the contract's execution, it was $1.12¾ per bushel; an average decline in price per bushel, during said interval, of 16¼ cents. A barrel of flour was shown to contain 4.6 bushels of wheat; also, that there was a direct relationship between the price of the latter and that of flour. Undisputedly, 955 barrels of flour remained unshipped. The employe selling the flour was on straight salary. Appellant's counsel objected to certain other evidence offered by appellee as a basis for the damages claimed, on the ground that the contract spoke for itself on the subject. The amount of liquidated damages in the court's judgment was arrived at by applying the above table, viz: (a) 955 (barrels of flour remaining unshipped on termination of contract) multiplied by 1/6¢ is $1.591, which, multiplied by 333 days (interval from June 18, 1937, to May 18, 1938) totals $530.02; (b) plus selling costs on the unshipped flour, $191; (c) 955 (the unshipped flour) multiplied by 4.6, the bushels of wheat in a barrel of flour, equals 4,393, which, multiplied by 16¼ (the difference in the average market price of cash wheat per bushel between date of contract and date of termination) is $721.02; or a sum total of $1,434.88, as liquidated damages. The 15% attorney's fees allowed in the contract, together with appellant's admitted debt of $950.37, constitutes the balance of the court's rendition. All these items, we think, are sustained by the record. Appellant's assignments and propositions, therefore, must be overruled and the judgment of the trial court affirmed.

Affirmed.