ANDERSON DEVELOPMENT COMPANY, INC., et al., Appellants,

v.

PRODUCERS GRAIN CORPORATION, Appellee.

No. 5069.

Court of Civil Appeals of Texas, Eastland.

Nov. 17, 1977.

Rehearing Denied Dec. 8, 1977.

James H. Milam, Crenshaw, Dupree & Milam, Lubbock, Graddy Tunnell, La Font, Tunnell, Formby, La Font & Hamilton, Plainview, for appellants.

Don M. Dean, Underwood, Wilson, Sutton, Berry, Stein & Johnson, Amarillo, Lucian E. Morehead, Morehead, Sharp, Tisdel & White, Plainview, for appellee.

WALTER, Justice.

Producers Grain Corporation recovered a judgment against Anderson Development Company, Inc. also known as and doing business as Anderson Cattle Company and Anderson Cattle Company, Inc. for $286,-760.54 on a contract for the sale of cattle. Anderson has appealed.

On December 6, 1974, Producers, as seller, entered into a contract for the sale of 2,000 head of cattle with Anderson, as purchaser. The contract stipulated delivery to Anderson and payment by draft on Anderson through the Frost National Bank of San Antonio, Texas.

On December 11, 1974, Anderson entered into a contract with American Beef Packers for the sale of 1,506 head of cattle that Anderson purchased from Producers. Producers did not participate in the negotiation of this contract. After Anderson and American Beef executed the contract, Russell Center of Anderson showed the contract to Grover Phillips of Producers. When asked by Center if American Beef could receive the cattle and send checks to Producers, Phillips replied, "That's fine".

The 1,506 head of cattle were delivered to American Beef. American Beef's checks for the cattle were dishonored when presented for payment.

On January 7, 1975, American Beef filed petition seeking relief under Chapter XI of the Bankruptcy Act. On February 7, 1975, Producers and Anderson entered into a nonwaiver agreement whereby any actions taken by Producers against American Beef in the bankruptcy proceeding would not be deemed an election of remedies or affect any rights which Producers has against Anderson. The agreement also provided:

"Producers Grain Corporation agrees, however, that any sum or sums which it may collect by or through the aforesaid actions shall be taken and held by it as a credit on any obligation of Anderson Development Company, Inc. . . ."

Producers' claim in bankruptcy was approved in the amount of $560,109.21. Payment was to be made according to the Plan of Arrangement approved by Producers, 55 percent of said claim in cash ($308,060.06) and a deferred payment of the balance of 45 percent.

The only issue submitted and the jury's answer and the court's instructions are as follows:

"Do you find from the preponderance of the evidence that on or about the 11th day of December, 1974, the Producers Grain Corporation, the American Beef Packers, Inc. and the Anderson Cattle Company each and all agreed that the Producers Grain Corporation would substitute the obligation of the American Beef Packers, Inc. to pay for a thousand five hundred and six head of Holstein steers instead of the obligation of the Anderson Cattle Company to pay for them.

ANSWER: 'YES' or 'NO'

ANSWER: NO

You are instructed that to effectuate the substitution of a new obligation between the parties for the old obligation there must be consent and agreement of all parties that the new obligation would operate as a discharge of the old obligation of the Anderson Cattle Company to pay for the cattle. It is not necessary that such agreement and consent to accept the new obligation instead of the first obligation be in writing or that it be evidenced by express words but may be proved from the acts and conduct of the parties and other facts and circumstances in evidence."

In its judgment, the trial court ordered Producers to apply any payment under the Plan of Arrangement first to the cost of the court, then to interest accrued under the judgment and thereafter to the payment of the principal sum of the judgment. Upon payment in full of the judgment, Producers must assign to Anderson all of its then existing rights under the Plan of Arrangement.

■ Anderson's contention the evidence establishes a valid accord and satisfaction as a matter of law cannot be sustained. In *George Linskie Company v. Miller-Picking Corporation,* 463 S.W.2d 170 (Tex.1971), the court said:

"The burden was upon defendant as the movant for a partial summary judgment to conclusively establish the affirmative defense of accord and satisfaction. The tests in cases of this nature are set forth in *Jenkins v. Henry C. Beck Company,* 449 S.W.2d 454 (Tex.Sup.1970); *H. L. 'Brownie' Choate, Inc. v. Southland Drilling Co.,* 447 S.W.2d 676, 679–680 (Tex. Sup.1969); and *Industrial Life Insurance Company v. Finley,* 382 S.W.2d 100, 104–106 (Tex.Sup.1964). In the *Beck* case, in order to support a summary judgment of accord and satisfaction, this Court held:

'There must be an unmistakable communication to the creditor that tender of the lesser sum is upon the condition that acceptance will constitute satisfaction of the underlying obligation. It has been said that the conditions must be made plain, definite and certain * * *; that the statement accompanying the tender of a sum less than the contract price must be so clear, full and explicit that it is not susceptible of any other interpretation.'"

■ The satisfaction in an accord and satisfaction is generally the performance of the new promise. However, a promise alone may be accepted as satisfaction. *Ferguson-McKinney Dry Goods Co. v. Garrett,* 252 S.W. 738 (Tex.Com.App.1923, holding approved). In that event, the intention of the parties is of major importance. In

*McCarty v. Humphrey,* 261 S.W. 1015 (Tex. Com.App.1924, jdgmt adopted), the court recognized:

" . . . accord and satisfaction, being dependent upon agreement, only occurs where the parties mutually assent to it. Their intention is a controlling element. In such a transaction 'there can be no agreement expressed or implied when both parties have no intention to make it, or when one has but the other has not.' "

■ The burden of proof in establishing the alleged defense of accord and satisfaction is on the party asserting it. The jury found against Anderson on conflicting evidence, therefore, Anderson's burden in this court is to show the evidence conclusively establishes accord and satisfaction. We hold Anderson has not discharged its burden.

■ If the satisfaction was to be the actual performance by American Beef, the executory agreement of accord was breached by nonperformance. An unexecuted accord cannot be a defense to a suit on the original contract. Upon default of the accord, the creditor may sue either on the accord or on the original contract. *Alexander v. Handley,* 136 Tex. 110, 146 S.W.2d 740 (1941).

■ Appellants' points 8 and 9 are as follows:

### "POINT EIGHT

The Trial Court erred in admitting, over objection of defendant, testimony of Grover Phillips that nothing was said by Russell Center or Grover Phillips as to whether the checks of American Beef would be in payment of the cattle.

### POINT NINE

The Trial Court erred in admitting, over objection of defendant, testimony of Grover Phillips that he did not tell Russell Center that they would not look to defendant for payment of the cattle and that he and Russell Center did not discuss release or forgiveness or anything of that nature."

Phillips was asked:

"Q   Was anything said by Russell Center to you or by you to Russell Center as to whether the checks from American Beef would be in payment of the cattle?"

And the record shows:

"A   No sir.

MR. MILAM:  May we have the same objection on that question?

THE COURT:  Yes sir, you may have the same objection.

MR. MILAM:  May we have a running objection on it?

THE COURT:  Yes sir."

Phillips also testified that he did not discuss release or forgiveness or anything of that variety; did not discuss the substitution of American Beef for Anderson; and did not discuss if and when American Beef sent the checks Anderson would be relieved of paying for the cattle.

It is difficult to determine what appellants' objection is. "The same objection on that question" and a "running objection" are general objections where several objections have been made. The record shows appellant had previously made objections that the testimony was argumentative, leading and suggestive, improper and invaded the province of the court and jury.

Producers contends several of the matters complained about were elicited without objections. For example, Phillips was asked:

"Q   When Russell Center came from the coffee room 50 feet back to your office and handed you the copy of Plaintiff's Exhibit No. 2, tell this Jury everything that was said in that conversation."

And he gave the following answers:

"A   Mr. Center said that he had sold 1,500 head of cattle to American Beef Packers. He gave me the copy of this document and asked if it would be all right if American Beef Packers sent the check to us and I

said 'This will be fine', and that's the conversation.

Q Was anything else said?

A No sir."

It does not appear from the record an objection was made to this testimony. The substance of this testimony is not set out in appellants' brief with reference to the pages of the record where same may be found as required by Rule 418, T.R.C.P. This testimony is substantially the same testimony as that set out in appellants' points of error.

We hold Anderson has not discharged its burden of showing the testimony set forth in its points of error was subject to the objections made. Also, it has failed to show that any error, if any, in admitting such testimony was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, T.R. C.P.

■ Appellants' point number 10 is as follows:

"The Trial Court erred in sustaining plaintiff's objections and refusing to permit cross examination of plaintiff's witness, Bill Nibler, by defendant as to whether it was the witness's understanding of the agreement that it was the obligation of American Beef to pay for the cattle instead of Anderson Cattle Company and that this was the agreement by Grover Phillips, manager of plaintiff's feed yard."

The witness could testify what was said by the parties, but his understanding and conclusions were not competent because his opinion as to the agreement invaded the province of the jury.

In *Terry v. Witherspoon*, 255 S.W. 471 (Tex.Civ.App.—Amarillo 1923, no writ), the court said:

" . . . Witherspoon and Kinney's statements as to what they concluded or understood from the conversation with W. H. Terry concerning the extent of their authority was not admissible, and in giving their understanding from what was said they invaded the province of the jury, and all such statements must be disregarded in determining the effect of the evidence. *Shaw v. Gilmer* (Tex.Civ. App.) 66 S.W. 679; *Biering v. Wegner,* 76 Tex. 506, 13 S.W. 537; *Buzard v. McAnulty,* 77 Tex. 438, 14 S.W. 138 . . . "

In *Shaw v. Gilmer,* 66 S.W. 679 (Tex.Civ. App.1902, no writ), the court said:

"Inasmuch as we will have to reverse the judgment for the reason just stated, we deem it proper to say that if the cause had been tried before a jury the admission of the testimony of Cotulla, complained of in the second assignment of error, as to his understanding of how the account should run, was such an error as would require a reversal of the judgment. Such testimony was simply a conclusion of the witness. His testimony should have been limited to facts within his knowledge, and as to what conclusions should be drawn from them would be for the jury."

We have considered the entire record and hold the finding to special issue number one is not against the great weight and preponderance of the evidence. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

■ We find no merit in appellants' point the court erred in submitting special issue number one over its objection that the issue did not submit the ultimate and controlling issue. *Hough v. Grapotte,* 127 Tex. 144, 90 S.W.2d 1090 (1936).

■ Appellants also contend the court erred in refusing to submit its instruction to the effect an agreement can either be made expressly or by implication, and that an implied agreement is where the acts of the parties are such as to indicate a meeting of the minds as implied and evidenced by their course of dealings. We find no merit in this contention. The instruction given by the court was proper under *Chastain v.*

*Cooper & Reed,* 152 Tex. 322, 257 S.W.2d 422 (1953).

■ In its final point of error, Anderson contends that the full amount of Producers' claim in bankruptcy, included in the Plan of Arrangement, should be credited to the judgment. The Plan of Arrangement is only relevant to this cause of action for determining the amount of credit due Anderson for "any sum or sums" which Producer "may collect".

The word "sum" is most commonly used to mean "money" and is lexically defined as such. Unless a different meaning plainly appears in the context in which it is used, its application is restricted to money. *U. S. v. Van Auken,* 96 U.S. 366, 24 L.Ed. 852 (1878); 83 C.J.S. Sum, p. 787. The word "money" ordinarily refers to cash or coin. *Stewart v. Selder,* 473 S.W.2d 3 (Tex.1971); *Baker & Taylor Drilling Co. v. Blanchard Drilling Co.,* 363 S.W.2d 818 (Tex.Civ.App. —Amarillo 1962, no writ).

The nonwaiver agreement, therefore, allowed a credit for any "cash" which Producer "may collect". When used in this context, "collect" is interpreted as that which is actually received in cash. *Board of Commissioners of Okfuskee County v. Hazelwood,* 79 Okl. 185, 192 P. 217 (1920); *Power v. Fleming County,* 99 Ky. 200, 35 S.W. 541 (1896); *OK Bakery v. Morten Milling Co.,* 141 S.W.2d 436 (Tex.Civ.App.—Dallas 1940, no writ).

At the time of judgment, the full amount of Producers' claim in bankruptcy was not "collected". The court properly denied Anderson's motion for credit of the entire claim in bankruptcy.

We have considered all of appellants' points of error and find no merit in them. They are overruled.

The judgment is affirmed.