John D. ROWE, Appellant,

v.

J. Gordon S. HARRIS, Appellee.

No. 5884.

Court of Civil Appeals of Texas, Waco.

Jan. 11, 1979.
Rehearing Denied Jan. 25, 1979.

R. L. Middleton, Jr., Roger D. Bush, Dallas, for appellant.

Rod L. Poirot, Thomas P. Earls, Dallas, for appellee.

OPINION

JAMES, Justice.

This is an appeal by the plaintiff from an instructed verdict in favor of defendant. We reverse and remand.

Plaintiff-Appellant John D. Rowe brought this suit against Defendant-Appellee J. Gordon S. Harris based upon a written construction contract, alleging that Harris had breached said written contract to Plaintiff Rowe's damage in the amount of $6479.77; and in the alternative that Harris was liable to Rowe under Sections 17.46 and 17.50 of the Business and Commerce Code (commonly called the Texas Deceptive Trade Practices Act) for certain alleged deceptive trade practices and that Harris was thereby liable for treble damages and reasonable attorney's fees.

Harris pleaded by way of defense that Rowe and Harris had reached an accord and satisfaction concerning the complaints made by Rowe, and in addition that the original contract had merged into the warranty deed executed and delivered by Harris to Rowe on July 7, 1976.

Trial was had to a jury, and after both sides had rested, the Defendant Harris moved for an instructed verdict, which motion was granted. Thereupon the trial court entered judgment that Plaintiff Rowe take nothing, from which judgment Plaintiff Rowe appeals.

On February 25, 1976, Rowe entered into a written contract with Harris wherein Harris agreed to build a home for Rowe in accordance with certain plans and specifications, for which Rowe agreed to pay Harris $96,760.00. Under the contract Harris was allowed 180 days from beginning of construction in which to complete same. Since construction actually began on March 12, 1976, Harris therefore had until on or about September 8, 1976, in which to complete performance, under the terms of the contract.

After construction was under way, Rowe asked Harris if an earlier move-in date

could be arranged. Harris preferred not to rush completion too much; however, at first Harris told Rowe that he might get the house completed by June 10, 1976. Later on, Harris told him that June 10th would be too early but that Rowe could move into the home by July 10, 1976.

Therefore, the parties set up a closing date for July 7, 1976. At this last-named date there were certain items of construction that had not been completed. Rowe was in a hurry to move into the place because he had already sold his then-existing home and had agreed to give up possession thereof. Harris agreed to go ahead and close, with the understanding that he would finish up the incomplete items within 30 days after closing. On July 7, 1976, the parties entered into a written agreement called "Escrow Agreement," the pertinent parts of which read as follows:

"ESCROW AGREEMENT
\* \* \* \* \* \*

"It is agreed by the undersigned parties to this transaction that the sum of $775.00 will be held in escrow by said Southwest Land Title Co., and the remainder of the proceeds, if any, are to be disbursed at this time. The funds escrowed hereunder are to be held in the amounts and until the following has been accomplished, to-wit:

  $500.00  for items included on the attached list
  200.00  for repair of the fireplace mantel
  _75.00_  for repair of front door
  $775.00  Total

"Southwest Land Title Co. is authorized to hold said deposit in escrow until the purpose of this agreement has been complied with at which time the deposit will be paid to J. Gordon S. Harris provided said Southwest Land Title Co. has received written approval of such payment from all parties to this agreement.

"In the event said written approval has not been received on or before 30 days from this date, then, a representative of Southwest Land Title Co. shall have access to said property to make inspection of same, and will be authorized to make disbursement after the above mentioned work has been completed.

"No liability or expense shall accrue against Southwest Land Title Co. by virtue of said company acting as escrow agent."

\* \* \* \* \* \*

Attached to the "Escrow Agreement" and being a part thereof is a sheet containing Rowe's handwriting, which sheet was initialled by both Rowe and Harris, and which reads as follows:

"The amount of $500.00 will be put in escrow and remain for 30 days for following work to be completed. At end of 30 days any work not completed to owners satisfaction will be considered not completed and payment allocated for those items will be paid to John D. Rowe.

| | | |
|---|---|---|
| $150.00 | 1. | Complete all paint, patching, touch-up finishing of cabinets, shelves, cleaning of F/place, brushing all cedar. |
| $150.00 | 2. | Install vents, replace all cedar stripping under doors, repair facer board over family room, replace ft. door knob, patio knob, replace board on side patio. |
| $100.00 | 3. | Complete yard work. |
| $100.00 | 4. | Repair driveway. |
| $500.00 | | |
| $200.00 | 5. | Repair or replace mantel. |
| $ 75.00 | 6. | Repair or replace ft. door trim & paint. |
| $775.00 | | Total. |

John R.
C. R.
J. H."

The closing which took place on July 7, 1976, was handled by the Southwest Land Title Co. At said closing Harris executed and delivered a warranty deed of the subject house and lot to Rowe, for which Rowe paid Harris $95,985.00, same being the agreed purchase price of $96,760 less $775.00 held back by the title company in accordance with the "escrow agreement." The title company has ever since held this money in escrow, and has never released same to either Rowe or Harris.

After the closing and after Rowe moved into the house in question, Harris made some efforts to complete the items set out in the escrow agreement; however, it is

undisputed that Harris never completed the items listed in said escrow agreement, within the thirty days or at any time thereafter. A few days before the 30 days (after closing) had expired, Rowe contacted the title company and requested that the $775.00 be paid to him (Rowe); however, the title company took no action and did not pay the money to either Rowe or Harris. The title company was never made a party to this suit, and from the record still holds the $775.00 in escrow.

Although Harris admits that he did not complete the items set out in the escrow agreement, Harris never tendered the $775.00 to Rowe, with this possible exception: After such sides had rested, and the testimony had been concluded, the parties entered into the following "stipulation":

(By Counsel for Defendant Harris):

"Well, further, the Defendant Harris, and the Plaintiff Rowe would stipulate that in the event the Plaintiff Rowe does not recover judgment in this case, the Defendant Harris would stipulate that the funds now on deposit with the Southwest Land Title Co. in escrow in the amount of $775.00 will be refunded to the Plaintiff Rowe, and the Defendant Harris will execute all instruments necessary for the refund."

As stated, the $775.00 has never been released, and is still held by the title company.

Upon Defendant's motion, the trial court granted an instructed verdict in favor of Defendant Harris, and entered judgment that Rowe take nothing, from which Rowe appeals.

Plaintiff-Appellant Rowe complains of the trial court's granting of the instructed verdict in favor of Defendant, contending that the evidence raises material fact issues that should have been submitted to the jury. We sustain these contentions, and reverse and remand the cause to the trial court for retrial on the merits.

In determining the propriety of an instructed verdict, we are required to view the evidence in the light most favorable to the losing party. Any inference which properly may be drawn from the evidence must be indulged against the granting of the motion. Conflicts, if any, in the testimony are to be disregarded. If the record reflects any testimony of probative force, either direct or circumstantial, in favor of the party against whom the verdict was instructed, we must hold the instruction to be improper. Testimony adverse to the losing party will be disregarded. *White v. White* (1943) 141 Tex. 328, 172 S.W.2d 295; *Air Conditioning, Inc. v. Harrison-Wilson-Pearson* (1952) 151 Tex. 635, 253 S.W.2d 422; *McRoy v. Riverlake Country Club* (Dallas, Tex.Civ.App. 1968) 426 S.W.2d 299, NRE; *Williams v. Frank Parra Chevrolet, Inc.* (Waco, Tex.Civ.App. 1977) 552 S.W.2d 635, no writ.

Bearing in mind the above rules, as we must, and applying same to the case at bar, we are of the opinion and hold that the evidence raises material fact issues which should have been submitted to the jury. We will not undertake to point out all of such fact issues raised by the record, but only representative examples of issues which we think should have been submitted to the jury. For example, the escrow agreement is ambiguous, and to clarify same would require jury findings as to what the parties intended by the language employed in said escrow agreement. On the first page it provides that $775.00 is to be held in escrow, whereas on the second page it provides that $500.00 is to be held in escrow. On the first page there is a vaguely worded provision that the $775.00 will be paid to Harris if Harris completes the work within 30 days to Rowe's satisfaction. However, the first page makes no provision as to what happens to the $775.00 if Harris did not complete the work within 30 days, which is precisely what did happen. On page two there is some language to the effect that the $500.00 held in escrow will be paid to Rowe if Harris fails to complete the work within 30 days, then work totalling $775.00 is set out on page two, and it is impossible to tell which $500.00 worth of work the parties are referring to.

The motion for instructed verdict was predicated upon two defensive grounds pleaded by Defendant-Appellee, to wit, (1) accord and satisfaction and (2) merger.

In the posture in which we find the case at bar, in order to affirm this instructed verdict we would have to say that the Defendant is entitled to judgment as a matter of law, because the evidence conclusively establishes either (1) accord and satisfaction or (2) that the original contract was merged into the warranty deed. We believe the evidence raises material fact issues under both doctrines, that is, of (1) accord and satisfaction and (2) merger, and that therefore the instructed verdict was improvidently granted.

First, does the escrow agreement, without the payment of the $775.00 in question, constitute an accord and satisfaction as a matter of law?

"An accord is an agreement whereby one of the parties undertakes to give or perform, and the other to accept, in satisfaction of a claim, liquidated or in dispute, and arising either from contract or from tort, something other than or different from what he is, or considers himself, entitled to; and a satisfaction is the execution, or performance, of such an agreement." 1 C.J.S. Accord and Satisfaction par. 1, page 462; *Slaughter v. Temple Lumber Company* (Houston, Tex.Civ.App. 1st 1957) 307 S.W.2d 108, 114, NRE.

An agreement between two parties to give and accept something of value in satisfaction of a right of action which one has against the other is an accord, and the execution of this agreement is a satisfaction. The term "accord and satisfaction," therefore, applies to the completed transaction, and constitutes a bar to any action on the original contract. *Ensley v. Spickard* (Dallas, Tex.Civ.App. 1950) 232 S.W.2d 780, 782, writ refused. As a general rule, an accord without a satisfaction does not bar. *Columbian National Fire Ins. Co. v. Dixie Co-op. Mail Order House* (Tex. Comm.App. 1925) 276 S.W. 219, 222, judgment adopted. The "satisfaction" in an accord and satisfaction is generally the performance of the new promise. However, a promise alone may be accepted as satisfaction. In that event, the intention of the parties is a controlling element, which is by its very nature a fact question. Accord and satisfaction, being dependent upon agreement, only occurs when the parties mutually assent to it, which again is a fact question. See *Rutherford v. Page* (Austin, Tex. Civ.App. (1968) 429 S.W.2d 602, 609, NRE; *Anderson Development Co. v. Producers Grain Corp.* (Eastland, Tex.Civ.App. 1977) 558 S.W.2d 924, 926, no writ, and the cases therein cited.

In the case at bar, there is nothing in the language of the escrow agreement that provides that such escrow agreement constitutes an accord between the parties. Therefore we are obliged to ascertain what the parties intended concerning this matter. Here the parties are in dispute. Rowe testified that this escrow agreement whereby the $775.00 was put in escrow for 30 days was merely an "incentive" to encourage Harris to expedite the completion of construction, and was not intended as an accord at all. To the contrary, Harris contended that the escrow agreement constituted an accord. Again, we have a fact question concerning the intentions of the parties. According to the above-cited authorities, if there is no mutual assent, there is no accord.

Even if we assume for the sake of argument that the escrow agreement constituted an accord, the evidence shows there has been no satisfaction, unless we can say conclusively that both parties intended that Rowe agreed to accept Harris's *promise* to complete the work within 30 days as satisfaction, as opposed to Harris's *actual performance* of the work. Here again, we have a fact issue as to what the parties intended.

Certainly Harris's "stipulation" at the conclusion of the evidence to the effect that if Rowe recovered nothing in the suit that Harris would agree that Rowe is entitled to the $775.00 does not constitute a "satisfaction." See *McGehee v. Shafer* (1855) 15

Tex. 198, 203, 205; *McHaney v. Hackleman* (San Antonio, Tex.Civ.App. 1961) 347 S.W.2d 822, 826, NRE; 1 Tex.Jur.2d "Accord and Satisfaction," par. 41, p. 240.

With reference to Appellee's defense under the doctrine of merger: Appellee asserts that the Appellant's cause of action under the original agreement was merged into the warranty deed of July 7, 1976. We cannot hold that the doctrine of merger bars Appellant's cause of action under the original contract as a matter of law, because the application of the doctrine of merger depends upon the intention of the parties, which presents a fact question. *Humber v. Morton* (Tex. 1968) 426 S.W.2d 554, 556; 26 C.J.S. Deeds par. 91 p. 845.

For the reasons hereinabove set out, we reverse and remand the cause for retrial.

REVERSED AND REMANDED.